**KELLEY DRYE & WARREN LLP**
Ronnie Arenas (State Bar No. 309674)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901
rarenas@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
William S. Gyves (pro hac vice forthcoming)
Randall L. Morrison (pro hac vice forthcoming)
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
wgyves@kelleydrye.com
rmorrison@kelleydrye.com

Attorneys for Petitioner
Bellridge Capital, LP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELLRIDGE CAPITAL, LP,<br><br>Petitioner,<br><br>v.<br><br>RAMY EL-BATRAWI,<br><br>Respondent. | Case No.<br><br>*Bellridge Capital, LP v. EVmo, Inc.,* Case No. 1:21-cv-07091-PGG Pending in the United States District Court for the Southern District of New York<br><br>Motion Hearing: August 30, 2022<br><br>**JOINT STIPULATION PURSUANT TO LR 37-2 RE: BELLRIDGE CAPITAL, LP'S MOTION TO COMPEL NON-PARTY'S COMPLIANCE WITH SUBPOENA** |

1

# **TABLE OF CONTENTS**

2

**Page**

3   I.      BELLRIDGE CAPITAL'S INTRODUCTORY STATEMENT ................... 1

4   II.     EL-BATRAWI'S INTRODUCTORY STATEMENT ................................ 3

5   III.    BELLRIDGE CAPITAL'S POSITION ......................................................... 7

6           A.    Factual Background .............................................................................. 7

7           B.    El-Batrawi Should be Compelled to Respond
8                 Immediately and Fully to the Subpoena ........................................... 14

9           C.    The Subpoena Targets Documents That
                  Are Plainly Relevant to the Underlying Action ................................. 15

10  IV.     EL-BATRAWI'S POSITION ....................................................................... 16
11
12          A.    Introductory Statement ...................................................................... 16

13          B.    Relevant Facts Relating to the Invalid Subpoena and Plaintiff's
                  Failure to Serve SDT on El-Batrawi ................................................. 18
14
15          C.    The Subpoena Duces Tecum Improperly Requires the Production
                  of Communications That Are Within the Scope of Attorney
16                Client Privilege That Will Require Company Counsel to Review
                  a Large Number of documents ........................................................... 20

17  V.      BELLRIDGE CAPITAL'S CONCLUSION ............................................... 22

18  VI.     EL-BATRAWI'S CONCLUSION ............................................................... 22

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION RE: MOTION TO COMPEL NON-PARTY'S COMPLIANCE WITH SUBPOENA

## I.    BELLRIDGE CAPITAL'S INTRODUCTORY STATEMENT

Petitioner Bellridge Capital, LP ("Bellridge Capital") respectfully submits this stipulation in support of its motion to compel respondent Ramy El-Batrawi's compliance with a subpoena <u>duces tecum</u> (the "Subpoena")[1] served in connection with a matter captioned <u>Bellridge Capital, LP v. EVmo, Inc.</u>, 1:21-cv-07091-PGG-SLC and pending in the United States District Court for the Southern District of New York (the "Underlying Action). El-Batrawi is a nonparty residing and/or working in this District.

El-Batrawi's response to the Subpoena was due no later than May 11, 2022. To date, El-Batrawi has served no formal objections to the subpoena. He has produced no responsive documents. Indeed, from April 2022 through June 2022, his counsel consistently declined to commit to a date certain by which El-Batrawi would produce those documents.

At a formal meet-and-confer on July 11, 2022, El-Batrawi's counsel represented -- as he has for months -- that he is "making progress" in terms of reviewing potential responsive documents. Counsel stated that he expected to make a "substantially complete" production by August 1, 2022. That estimation is implausible and thus unacceptable, for the reasons discussed below. Absent judicial intervention, El-Batrawi will continue his efforts to delay or avoid complying with the Subpoena. Bellridge Capital respectfully requests that the Court enter an order directing El-Batrawi to fully comply with the subpoena within five calendar days of that order.

El-Batrawi is the founder and former Chief Executive Officer of EVmo, Inc. ("EVmo"), the defendant in the Underlying Action. The issues in the Underlying Action are hotly contested. Bellridge Capital and EVmo, however, do agree on one thing: El-Batrawi is the key witness in that litigation. His immediate

---

[1]    A copy of the Subpoena is attached as **Exhibit 1** to the Declaration of William S. Gyves.

compliance with the Subpoena is crucial both to Bellridge Capital's claim and EVmo's defense.

The Underlying Action arises out of EVmo's refusal to honor Bellridge Capital's exercise of a warrant to purchase up to 1.5 million shares of EVmo's common stock.  (A copy of the Complaint in the Underlying Action is attached as Exhibit A to the Subpoena.)  EVmo rejected Bellridge Capital's attempted exercise of its rights under the warrant on the ground that the warrant had been amended to omit certain anti-dilution provisions of critical importance to Bellridge Capital. Bellridge Capital denies having ever agreed to amend to the warrant.  El-Batrawi apparently is EVmo's only source of information to the contrary.

EVmo has offered multiple conflicting accounts of the warrant's alleged amendment.  Significantly, El-Batrawi submitted a declaration in the Underlying Action averring that he and Bellridge Capital's managing partner, Boris (Robert) Klimov, executed an agreement formally amending the warrant to strike the anti-dilution provisions.  (A copy of El-Batrawi's declaration is attached as Exhibit C to the Subpoena.)  El-Batrawi attached to his declaration a document he claims constitutes that agreement.  Klimov under oath has denied that he signed the "agreement."  Bellridge Capital maintains that the purported agreement is a fabrication.  Indeed, through discovery, Bellridge Capital has developed compelling evidence that the alleged warrant amendment is one of a number of fabricated documents relating to the alleged agreement to strike the anti-dilution provisions.

In light of the foregoing, Bellridge Capital issued the Subpoena to El-Batrawi for documents concerning, among other things, the warrant, the purported amendment of the warrant and related communications between El-Batrawi and Klimov.  Despite Bellridge Capital's exhaustive efforts to secure El-Batrawi's compliance, to date El-Batrawi has not provided any documents in response to the Subpoena, nor has he served written objections.  Accordingly, Bellridge Capital

1  moves this Court to compel El-Batrawi's expeditious and full compliance with the

2  Subpoena.

3      II.      **EL-BATRAWI'S INTRODUCTORY STATEMENT**

4      Respondent Ramy El-Batrawi[2], who lives and works within Los Angeles

5  County, is a non-party to this case.  Plaintiff Bellridge Capital's[3] motion to compel,

6  like the underlying *subpoena duces tecum* ("SDT"), is unduly burdensome,

7  abusive, fails to comport with the strict requirements of Federal Rule of Civil

8  Procedure 45(d) and is on its face invalid, as the SDT bears no date for

9  compliance.  Plaintiff has failed as well to comply with this Court's Local Rules in

10  that the so-called Rule 7-3 conference, which although there was a conference, the

11  discussion did not touch upon *any* of the bases for this motion to compel.  In fact,

12  during the conference Counsel never mentioned their intent to file a motion to

13  compel.

14      El-Batrawi reserves his right to serve objections to the subpoena should the

15  court rule that he has been served with a valid subpoena. Its not like Mr. El-

16  Batrawi has not "responded" to the request for documents, however.  His counsel

17  has previously endeavored to work with Plaintiff's counsel voluntarily to search

18  for, review and produce the limited number of documents that are actually relevant

19  to this case  -- without imposing burdensome, oppressive and unnecessary costs on

20  Mr. El-Batrawi to comply. In any event, as we demonstrate in detail below, the

21  SDT is invalid on its face; it was not timely served on El-Batrawi's counsel – the

22  SDT was sent to Respondent's counsel on or  about April 27, 2022 but required a

23  substantial production of documents on <u>April 4, 2022</u> – a logistical impossibility

24  rendering the SDT a nullity at the outset.  Moreover the SDT was never served on

25  Respondent El-Batrawi, and his counsel never agreed to accept an invalid

26

27  [2] Ramy El-Batrawi shall be referred to herein as "El-Batrawi" or "Respondent."  The Defendant, EvMo, Inc. may also be referred to as "YayYo" which was its original name.

28  [3] Moving party Bellridge Capital, Inc. shall be referred to herein as "Bellridge" or Plaintiff.

subpoena.  The law is clear that subpoenas must be timely served. "A subpoena not served until after the date on which the witness is directed to appear is without effect." *See Schroeder v. State*, 89 Ind. App. 254, 166 N.E. 28 (Indiana 1929).  In any event, as the attached declaration of EvMo's counsel in the action pending in the SDNY, James Nealon, attests, there is neither a rush for Mr. El-Batrawi to provide his documents to Bellridge nor any justification for engaging in a motion to compel, burdening the court unnecessarily and seeking relief that will be impossible to comply with (*See* Nealon Decl.,  ¶2, attached as Exhibit A hereto.)[4]

Accordingly, Respondent respectfully cross-moves to quash the invalid subpoena or at least modify the subpoena in its entirety limiting its scope to legitimate, relevant, non-privileged documents that are squarely within the scope of the instant dispute, and providing Respondent with a reasonable amount of time to complete an exhaustive review of electronically stored information (or "ESI") a production that can be accomplished relatively quickly and with limited costs without imposing an undue burden on Respondent – again a non-party to the case.

Leaving aside the fact that the SDT is invalid by virtue of not being timely served on El-Batrawi prior to the date requiring the return, the subpoena suffers from other fatal flaws.  One flaw is the SDT's intentionally burdensome requirements.  This case is neither complicated, complex nor deserving of massive over-kill litigation tactics, litigation practices apparently in favor in other districts. The dispute, as set forth in a prolix, bloated 30-page federal complaint, can be easily distilled (quoting from select excerpts in the Complaint):

- Bellridge made an investment in YayYo of $6M (Compl. ¶3)
- "To induce this investment, the Company issued to Bellridge Capital a

---

[4] Mr. Nealon states that "a substantial amount of documents from Mr. El-Batrawi have already been collected and produced by EVmo as part of EVmo's own document production efforts in the Main Action, which are principally emails sent to or from Mr. El-Batrawi's EVmo email addresses (i.e., company email addresses). In particular, the large majority of the over 62,000 pages of documents that EVmo has produced in response to Bellridge's document requests have come from Mr. El-Batrawi

JOINT STIPULATION RE: MOTION TO COMPEL NON-PARTY'S COMPLIANCE WITH SUBPOENA

warrant to purchase up to 1.5 million shares of its common stock at an exercise price of $4.00 per share." (Compl. ¶4)

- Included in the original warrant were "certain anti-dilution measures designed to protect Bellridge Capital's upside if the value of the Company's stock declined." (Compl. ¶5)

- The Company rejected Bellridge's later attempt to exercise its warrants in May 2021 pursuant to the anti-dilution clause on the basis of an "amendment" to the warrant that El-Batrawi and Boris (Robert) Klimov agreed upon in 2019 months prior to the Company's IPO (Compl.¶¶ 8-9)

- Plaintiff alleges that Bellridge "did not orally agree to waive the warrant's crucial anti-dilution provisions" taking the position that Klimov's signature on a contested "amendment" to the Warrant was forged and was "an amateurishly implausible fabrication." (Compl. ¶ 10) The Defendant (and Mr. El-Batrawi) obviously disagrees, stating that the Amendment did occur and worked to remove the anti-dilution clause.

The only witnesses to the signing of the amendment to the warrant are El-Batrawi and Klimov. It is difficult to image a commercial dispute that is simpler or more straightforward. Either Klimov signed the amendment or he did not.

Only a handful of documents are relevant in adjudicating a dispute over the "amended warrant," a document that was created less than three years ago. As noted, Klimov's signature is either genuine or not -- El-Batrawi has stated that it is genuine and was handed to Klimov personally during a visit Klimov made to Los Angeles shortly before the Company went public in 2019. There may be communications between the two men germane to this issue, and El-Batrawi has agreed to search for and produce such communications to the extent they exist. Instead of requesting documents from El-Batrawi consisting of those relevant,

focused and indeed dispositive documents however, the SDT seeks the production of scores of categories of documents and potentially thousands of documents that by their nature are subject to attorney-client privilege or of no conceivable relevance.  The SDT itself was over 900 pages long and required hours to even read -- no less respond to.

Rule 45(d) and case law forbids the approach taken here by plaintiffs. Under the caption "Protecting a Person Subject to a Subpoena" Rule 45(d) requires a party issuing a SDT to "avoid" imposing an undue burden or expense and provides that sanctions may be imposed where, as here, a litigant seeks to inflict both an excessive burden and unnecessary expense on a non-party, not to mention requires a complex production and review of ESI to occur within a matter of days. The pertinent rule provides:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

In the words of the court in *Gilmore v. Jones*, 339 F.R.D. 111 (WDVA 2021)  "the sheer breadth of the subpoenas shows that [the serving party] has embarked on a fishing expedition into the existence of some amorphous [issue.] Such broad discovery requests abuse the discovery process, particularly when directed to nonparties. 'A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it.' *Virginia Dept of Corrections v. Jordan*, 921 F.3d 180, 190 (4th Cir. 2018).

## III.    BELLRIDGE CAPITAL'S POSITION

### A.    Factual Background

El-Batrawi resides and works in Los Angeles County.  On March 21, 2022, after having advised that he was authorized to do so, EVmo's counsel in the Underlying Action accepted service of the Subpoena on El-Batrawi's behalf.  On April 26, 2022, EVmo's counsel advised that he no longer represented El-Batrawi. He further advised that El-Batrawi had retained George B. Newhouse, Jr. as his counsel with respect to the Subpoena.  See Declaration of William S. Gyves ("Gyves Decl."), ¶¶2, 4-7, Ex. 1.

When Bellridge Capital's counsel contacted Mr. Newhouse, he stated that El-Batrawi denied that he had ever authorized EVmo's counsel to accept service of the Subpoena on his behalf.  Mr. Newhouse nonetheless agreed to accept service of the Subpoena if Bellridge Capital agreed that service "shall be deemed effective as of today, April 27, 2022[.]"  Bellridge Capital agreed to Mr. Newhouse's condition and effected service upon El-Batrawi -- for a second time.  Id., ¶¶8-10, Ex. 2.

The Subpoena seeks the following categories of documents from El-Batrawi:

> 1.    If the Warrant Amendment reflects Klimov's manual signature, the document reflecting Klimov's original manual signature for inspection and copying.
>
> 2.    If the Warrant Amendment reflects Klimov's electronic signature, a copy of that document as received by you.
>
> 3.    If You received the Warrant Amendment reflecting Klimov's signature by email, any and all documents referring, reflecting or relating to, or otherwise constituting, any such email(s).
>
> 4.    If You received the Warrant Amendment reflecting Klimov's signature by some means other than email, any and all documents referring, reflecting or relating to the conveyance of that document to You by that other means.

7

5.      If Klimov or any other person emailed Klimov's electronic signature to You separately from the Warrant Amendment, any and all documents referring, reflecting or relating to, or otherwise constituting any such email(s).

6.      Any and all documents referring, reflecting or relating to, or otherwise constituting, any communications at any time between EVmo and You (or your counsel, if any) relating in any way to the Warrant Amendment.

7.      Any and all documents referring, reflecting or relating to, or otherwise constituting, any communications at any time between EVmo's outside counsel and You (or your counsel, if any) relating in any way to the Warrant Amendment.

8.      Any and all documents referring, reflecting or relating to, or otherwise constituting, any communications at any time between EVmo's counsel at Carmel, Milazzo & Feil LLP and You (or your counsel, if any) relating in any way to the Warrant Amendment.

9.      Any and all documents referring, reflecting or relating to the circumstances in which Klimov signed the Warrant Amendment.

10.     Any and all documents referring, reflecting or relating to the circumstances in which You received the Warrant Amendment signed by Klimov.

11.     Any and all documents referring, reflecting or relating to the circumstances in which You located the Warrant Amendment after the commencement of litigation, captioned <u>Bellridge Capital, LP v. EVmo, Inc., f/k/a Yayo, Inc. and Rideshare Rental, Inc.</u>, No. 1:21-cv-07091-PGG (S.D.N.Y.), on August 23, 2021.

12.     Any and all documents referring, reflecting or relating to the circumstances in which the Warrant

JOINT STIPULATION RE: MOTION TO COMPEL NON-PARTY'S COMPLIANCE WITH SUBPOENA

Amendment was first forwarded to EVmo.

13.     Any and all documents referring, reflecting or relating to the circumstances in which the Warrant Amendment was first forwarded to Withers Bergman.

14.     Any and all documents referring, reflecting or relating to, or otherwise constituting, all drafts or versions of the Warrant Amendment.

15.     Any and all documents referring, reflecting or relating to the drafting of the Warrant Amendment.

16.     Any and all documents referring, reflecting or relating to, or which otherwise are sufficient to establish, when the initial draft or version of the Warrant Amendment was first created.

17.     Any and all documents referring, reflecting or relating to, or which otherwise are sufficient to identify, the computer or computer system on which the initial draft or version of the Warrant Amendment was first created.

18.     Any and all documents referring, reflecting or relating to, or otherwise constituting, any steps taken by You to amend or modify the Warrant other than through the Warrant Amendment.

19.     Any and all documents referring, reflecting or relating to, or otherwise constituting, any communications between EVmo (or its outside counsel) and you (or your counsel, if any) regarding the El-Batrawi Declaration.

20.     Any and all documents referring, reflecting or relating to, or which otherwise are sufficient to identify, the person(s) who drafted the El-Batrawi Declaration.

21.     Any and all drafts or versions of the El-Batrawi Declaration exchanged between You (or your counsel, if

JOINT STIPULATION RE: MOTION TO COMPEL NON-PARTY'S COMPLIANCE WITH SUBPOENA

any) and EVmo (or its outside counsel).

22.     Any and all documents referring, reflecting or relating to Bellridge Capital's notice on or about May 28, 2021 of its intention to exercise its rights under the Warrant.

23.     Any and all documents referring, reflecting or relating to EVmo's evaluation of Bellridge Capital's May 28, 2021 notice of its intention to exercise its rights under the Warrant.

24.     Any and all documents referring, reflecting or relating to EVmo's response to Bellridge Capital's May 28, 2021 notice of its intention to exercise its rights under the Warrant.

25.     Any and all documents referring, reflecting or relating to any oral agreement between EVmo and Bellridge Capital to amend or otherwise modify the Warrant.

26.     Any and all documents referring, reflecting or relating to, or otherwise constituting, any communications between EVmo (or its outside counsel) and you (or your counsel, if any) concerning any oral agreement to amend or otherwise modify the Warrant.

27.     Any and all documents referring, reflecting or relating to the "Form of Warrant" attached as Exhibit 4.3 to EVmo's 2019 Annual Report submitted to the SEC on or about March 31, 2020 on Form 10-K.

28.     Any and all documents referring, reflecting, or relating to the circumstances in which the "Form of Warrant" came to be attached as Exhibit 4.3 to EVmo's 2019 Annual Report submitted to the SEC on or about March 31, 2020 on Form 10-K.

29.     Any and all documents referring, reflecting or relating to, or otherwise constituting, any

communications between EVmo (or its outside counsel) and you (or your counsel, if any) relating in any way to this litigation, captioned <u>Bellridge Capital, LP v. EVmo, Inc., f/k/a Yayo, Inc. and Rideshare Rental, Inc.</u>, No. 1:21-cv-07091-PGG (S.D.N.Y.).

<u>Id.</u>, ¶4, Ex. 1.

El-Batrawi was required to serve written objections, if any, to the Subpoena by May 11, 2022.  Fed. R. Civ. P. 45.  He has served no objections.  To date, El-Batrawi has produced no documents in response to the Subpoena.  Gyves Decl., ¶¶12, 15.

Bellridge Capital's counsel have attempted in good faith to secure El-Batrawi's compliance with the Subpoena:

- As early as April 26, 2022, Mr. Newhouse advised, "We are ... working on collecting (or reviewing the work done) with respect to Ramy's responsive documents.  A supplemental review may be necessary, I am looking into that now."

- On April 27, 2022, Mr. Newhouse advised, "We will initiate a search for all responsive documents and advise as to when we will be in a position to produce any additional documents that the company has not already provided -- or is in the process of providing."

- On May 9, 2022, Bellridge Capital's counsel attempted without success to contact Mr. Newhouse by telephone to discuss the status of El-Batrawi's production.  Counsel then emailed Mr. Newhouse inquiring, "Checking in with you re the status of Ramy's production in response to the subpoena. Please advise."

- On May 12, 2022, Mr. Newhouse advised that it would be "a matter of weeks" before El-Batrawi commenced his production.  When counsel inquired if the production would commence within a month, Mr. Newhouse responded that it was premature to respond to even that relaxed schedule.

- On May 19, 2022, Bellridge Capital's counsel emailed Mr. Newhouse inquiring, "Any updates re the status of Ramy's production?"  Counsel further advised that "the delays re Ramy's production essentially have brought the deposition phase of this matter to a stand-still" and that the Court had been advised of this fact.  Mr. Newhouse responded, "We're meeting with the vendor tomorrow to discuss the review and recovery process and I should have a better idea after that as [to] the timing."  To that Bellridge Capital's counsel requested

clarification: "the review process is not yet underway as of today?" Mr. Newhouse did not respond.

- On June 2, 2022, Bellridge Capital's counsel emailed Mr. Newhouse and inquired, "Any update re the status of Ramy's production?" Mr. Newhouse responded, "We are still working on it. The Vendor did the download session today with respect to Ramy's relevant email accounts, and Disco is currently working on the search and retrieval process. I don't have a timetable for production at present but you may assure the Court that our vendor is working on it. We will produce responsive, non-privileged documents as quickly as possible." Bellridge Capital's counsel responded, "Do you anticipate producing documents this month?" Mr. Newhouse replied, "That is certainly our expectation but I can't really say until I get a report back from the vendor."

- On June 14, 2022, Bellridge Capital's counsel emailed Mr. Newhouse, "Please advise as of the status of Ramy's production." In response, Mr. Newhouse stated, "I asked the team at Disco (the vendor doing the work) to update me. I will get back to you when they respond." Counsel did not hear back from Mr. Newhouse with any update.

- On June 24, 2022, Bellridge Capital's counsel emailed Mr. Newhouse and quaried, "Any news, George? We need to get some resolution in the very near term (i.e., next week) or we'll do what we have to do in terms of looping in the magistrate judge. Would like to avoid that but we are on the verge of having no alternative." Mr. Newhouse did not respond.

Id., ¶¶11, 13-14, Ex. 3.

On June 29, 2022, counsel for Bellridge Capital forwarded a Local Rule 37-1 meet-and-confer letter to Mr. Newhouse. Id., ¶13, Ex. 3. Counsel met and conferred on July 11, 2022 but were not able to reach a mutually satisfactory resolution to the issue of El-Batrawi's noncompliance with the subpoena. Id., ¶16.

During the meet-and-confer, El-Batrawi's counsel stated -- as he has since April -- that he was "making progress" in terms of collecting and reviewing documents. El-Batrawi's counsel represented that he would make a "substantial" production within "two weeks" (i.e., by July 25, 2022) and be "substantially completed" with the production within "two to three weeks" (i.e., by August 1, 2022). These representations are implausible and thus unacceptable. Without immediate judicial intervention, El-Batrawi almost certainly will continue his attempts to delay or avoid entirely complying with the Subpoena. Id., ¶¶17-18.

Significantly, as El-Batrawi and his counsel are aware, paper discovery is scheduled to conclude in the Underlying Action on July 22, 2002.  A settlement conference with Magistrate Judge Sarah L. Cave is scheduled for August 16, 2022. Depositions are scheduled to proceed if the settlement conference proves unsuccessful.  A deposition subpoena also has been served upon El-Batrawi.  Id., ¶19.

El-Batrawi is unlikely to voluntarily fulfill his commitment to substantially comply with the Subpoena by August 1, 2022 for a number of reasons.  First, during the meet-and-confer, El-Batrawi's counsel stated that 10,920 potentially responsive documents had been culled from a universe of 168,000 documents. Counsel advised that he "recently" hired one employee who will be solely responsible for reviewing those 10,920 documents.  El-Batrawi's counsel declined to comment on whether this review process has even commenced.  When asked if there were any responsive documents that could be produced immediately on a rolling basis, El-Batrawi's counsel responded that there were not.  Plainly, El-Batrawi's review of potentially responsive documents had not yet commenced as of July 11, 2022.  Id., ¶¶20-21.  This is consistent with El-Batrawi's delay strategy since initially being served with the Subpoena in March.

In addition, El-Batrawi's counsel advised that he plans to defer to EVmo's counsel with respect to conducting a privilege review of whatever documents are pulled for potential production from the universe of 10,920 documents.  For months, EVmo's counsel has been attempting without success to coordinate with El-Batrawi for purposes of conducting this privilege review.  Id., ¶22.

Asked when he expected to turn those documents over to EVmo's counsel for a privilege review, El-Batrawi's counsel stated during the meet-and-confer that he expected to do so in "two to three weeks."  If EVmo's counsel has to wait two to three weeks to even begin a privilege review of El-Batrawi's documents, El-Batrawi's will not be in a position to have substantially completed his production

13

to Bellridge Capital by August 1, 2022.  Id., ¶23.  Again, this is all consistent with
El-Batrawi's delay strategy from the outset.

Based on Bellridge Capital's inquiry into the underlying facts and
circumstances, including a close review of voluminous documents produced by
EVmo and other nonparties, El-Batrawi has every reason to prefer not to comply
with the Subpoena.  This inquiry, as supplemented by the preliminary opinions of a
forensic document examiner and a forensic computer specialist, has revealed
instances in which documents critical to the Underlying Action are, in fact,
fabrications.  Bellridge Capital expects that the documents targeted by the
Subpoena will both bolster its position that EVmo's defense in the Underlying
Action is based on fabricated documents, and facilitate the inquiry into who is
responsible for those fabrications.  Id., ¶¶24-25.

**B.    El-Batrawi Should be Compelled to Respond
Immediately and Fully to the Subpoena**

Rule 45 permits a party to serve a subpoena commanding a nonparty "to
attend and give testimony or to produce and permit inspection and copying of"
documents.  Fed. R. Civ. P. 45(a)(1)(c).  A subpoena is subject to the relevance
requirements of Rule 26(c).  Rich v. Kirkland, 2015 WL 7185390, at *2 (C.D. Cal.
Nov. 13, 2015); Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005)
("'non-party witness is subject to the same scope of discovery under [Rule 45] as
that person would be as a party to whom a request is addressed pursuant to Rule
34'").  Thus, through a subpoena, a party may properly command the nonparty to
produce non-privileged documents that are relevant to the underlying action or
"reasonably calculated to lead to the discovery of admissible evidence."  Fed. R.
Civ. P. 26(b)(1).

For purposes of Rule 26(b)(1), a "relevant" matter "is any matter that 'bears
on, or that reasonably could lead to other matters that bear on, any issue that is or
may be in the case.'"  Rich, 2015 WL 7185390, at *2 (quoting Oppenheimer Fund,

14

<u>Inc. v. Sanders</u>, 437 U.S. 340, 351 (1998)).  Relevancy "should be construed liberally and with common sense and discovery should be allowed unless the information sought has no conceivable bearing on the case."  <u>Id.</u>  (internal quotations omitted).

The nonparty may object in whole or in part to the subpoena.  Fed.R.Civ.P. 45(d)(2)(B).  The nonparty's failure to timely object "generally requires the court to find that any objections have been waived."  <u>Moon</u>, 232 F.R.D. at 636.  Pursuant to Rule 45, an order compelling responses is warranted when a nonparty fails to formally respond to a subpoena.  Fed. R. Civ. P. 45(d)(2)(B)(i); <u>see</u> <u>In re Subpoena to Vaughn Perling</u>, 2019 WL 8012372, at *3 (C.D. Cal. Dec. 2, 2019) (court may grant a motion to compel compliance with a Rule 45 subpoena … "where the nonparty has not formally objected but has instead failed to respond.")

As demonstrated above, El-Batrawi has not produced any documents in response to the Subpoena.  El-Batrawi has not served timely written objections to the Subpoena.  Relief under Rule 45 is thus warranted.

## C.    The Subpoena Targets Documents That Are Plainly Relevant to the Underlying Action

The Subpoena is plainly directed at non-privileged documents relevant to the Underlying Action.  The core issue in the Underlying Action is whether the warrant was amended.  Klimov of Bellridge Capital maintains that it was not; El-Batrawi claims that it was.  EVmo's defense in the Underlying Action is based on El-Batrawi's account of the warrant's alleged amendment.  Bellridge Capital is not in possession of any agreement to amend the warrant.  EVmo has produced no such document and concedes that any such document must be in El-Batrawi's possession.  By submitting his declaration in the Underlying Action, El-Batrawi has injected himself into this dispute and placed into question whether he is in possession of documents relevant to the Underlying Action.  The Subpoena is narrowly targeted at those documents and nothing else.  El-Batrawi should be

1  compelled to produce immediately all responsive documents in his possession,

2  custody or control.

3  **IV.        EL-BATRAWI'S POSITION**

4      **A.    Introductory  Statement**

5          This motion to compel, like the underlying *subpoena duces tecum (*"SDT"),

6  is abusive, unnecessary and fails to comport with the strict requirements of Federal

7  Rules of Civil Procedure 45(a) & 45(d) – since the underlying subpoena was

8  served (if it was served at all which El-Batrawi disputes) ***after*** the due date for

9  producing responsive documents.  Accordingly, Respondent respectfully cross-

10 moves to either quash the SDT or limit its scope to legitimate, relevant documents

11 that are squarely within the scope of the instant dispute.

12         The Court, in short, need not do Bellridge's work for them.  The motion to

13 compel is unnecessary.  If Plaintiff wants documents from Mr. El-Batrawi and

14 desires the assistance of the Court's enforcement powers in pursuit of that

15 objective, the first step is issuance of a *valid subpoena*, one with a reasonable date

16 for compliance/response.  The current subpoena is the legal equivalent of a blank

17 check: Bellridge asks the Court to effectively provide the missing (but all

18 important detail): ***a date for compliance*** – or other response to the SDT.  This

19 should not be difficult for Bellridge to do, if deemed important to their case.  Issue

20 an updated, and hopefully revised SDT.  The court should instruct Bellridge to start

21 the process over but do it the right way.  Serve the subpoena in a manner consistent

22 with the federal rules and comply with the elements of a valid Rule 45 subpoena

23 when it is served by providing for a reasonable time to comply.  The date needs to

24 be in the future.

25         Bellridge argues in the preceding sections, however, that Mr. El-Batrawi's

26 response to the Subpoena was due "by May 11, 2022.  Fed. R. Civ. P. 45."  The

27 Court should ask:  where does that date come from?  Certainly it won't be found

28 on the invalid SDT. On Exhibit 1 to Plaintiff's motion the date for compliance is

shown as April 4, 2022 – nearly three weeks *before* Plaintiff ever bothered to send

Mr. El-Batrawi's counsel the operative document.   Where in Rule 45 is there

language implying (no less expressly setting forth) that an undated, open book

subpoena may be validly served and enforced by a district court?

The clear, and we submit indisputable, answer is that Rule 45 says no such

thing.  If fact Rule 45 provides quite to the contrary.  Rule 45 unambiguously

provides for the following elements for valid subpoena in a federal action:

*Form and Contents.*

(A) *Requirements—In General.* Every subpoena must:

(i) state the court from which it issued;

(ii) state the title of the action and its civil-action number;

(iii) command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises.  (FRCP 45(a); emphasis added.)

The wording "at a specified time and place" means just what it says.  The

subpoena needs to specify a "time and place" in the *future* for performance.

Setting forth a date in the past is not sufficient.  The time and place, moreover

needs, by implication, to be reasonable.[5]  It is fair to say that commands requiring

action in the past is not reasonable, nor even possible.  Absent a specified "time

and place" the subpoena is invalid; it has no legal effect and is not enforceable by a

federal court.

---

[5] Rule 45(d)(3)(A)(i) supplies the implication that open dated subpoenas are invalid is it provides that a subpoena may be quashed "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply."

## B. Relevant Facts Relating to the Invalid Subpoena and Plaintiff's Failure to Serve SDT on El-Batrawi

There is no question that Mr. El-Batrawi was never properly served with the SDT. First Plaintiff has not furnished a proof of service as required by the Rule. They don't claim to have attempted to serve Mr. El-Batrawi personally as technically the rule requires; through his counsel, Mr. El-Batrawi has established that he was not only never served, he was never even provided with a copy of the SDT. There is no dispute as to the following facts.

Mr. El-Batrawi has never seen, received or been served with the SDT, and although his counsel, in their attempt to cooperate, discussed with Company Counsel the need to obtain and produce certain documents relating to the dispute, Mr. El-Batrawi did not authorize the Company to "accept" service of an SDT on his behalf. (Newhouse Decl. ¶4(a).) Bellridge offers no plausible contention to the contrary, nor do they supply proof of their claim. Nor for that matter did Mr. El-Batrawi authorize his counsel to accept service of an *invalid SDT*. Mr. Newhouse, Mr. El-Batrawi's present counsel, states in his declaration that Mr. El-Batrawi authorized him "to cooperate with the parties in locating and producing relevant documentation to the dispute," and that counsel was authorized "to accept service of valid SDT *if* plaintiff's counsel wanted to serve him with an SDT." (Newhouse Decl., ¶4b.) Bellridge never did so, and again supplies not proof to the contrary. So Mr. El-Batrawi was never served. That should end the inquiry with respect to a motion to compel.

This is not to say, however, that Mr. El-Batrawi's counsel, after reviewing the invalid SDT that was provided for his review, refused to work on producing relevant, non-privileged documents to the parties. The record shows clearly to the contrary that his counsel has initiated the steps that should lead, in the near future, to a substantial production. (*See* Newhouse Decl, Ex. A, Declaration of James Nealon.) The delays that have occurred were disclosed to Bellridge in numerous

emails and during a "meet and confer" which also failed to comport with the local rules because opposing counsel failed to thoroughly discuss the motion, their authorities and proposed resolution.[6]

Mr. El-Batrawi's counsel did not get involved in the collection, review and submission of relevant documents until April 26, 2022 (less than 90 days ago). Counsel informed Bellridge's counsel at the outset that he "was in "the process of being engaged by Mr. El-Batrawi for purposes of his being a witness in this case." Counsel asked Mr. Gyves to "go ahead and forward any subpoenas directly to me." (See Newhouse Decl., ¶7; Exhibit C.) This was not an indication that Counsel would accept the subpoena on his client's behalf – just a request to review the scope of the document request.

It was Mr. El-Batrawi's intention to cooperate with the request for documents, and that intention, despite the harassing communications that followed (and this unnecessary motion to compel) has not changed. Even then, given the task at hand involving hiring an independent vendor (DISCO), figuring out additional custodial email accounts that needed to be downloaded and reviewed, fixing search terms and then conducting the review, no one could have stated how long the process would take. It is positively ludicrous to maintain, as Bellridge apparently does, that Mr. El-Batrawi was expected, no less required, to produce document in ten days. The dates of production could not be estimated at that point, as the record of emails makes clear.

Randall Morrison, Mr Gyves associate at Kelly Drye & Warren send Mr. Newhouse an email on Wednesday, April 27, 2022 at 5:16 a.m. that said simply "George: I've attached the subpoenas. We propose a call at 3 PM Eastern this

---

[6] Local Rule 37-1 provides in pertinent part: " The moving party's letter must identify each issue and/or discovery request in dispute, state briefly as to each such issue/request the moving party's position (and provide any legal authority the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought. Bellridge did not do so.

JOINT STIPULATION RE: MOTION TO COMPEL NON-PARTY'S COMPLIANCE WITH SUBPOENA

afternoon." (Newhouse Decl. ¶8.) Bellridge never sent a valid subpoena after that, and counsel for Mr. El-Batrawi never acknowledged "receipt of such invalid service." (See Id.; ¶10) Nor did Respondent's counsel agree to waive any objections to improper service or other legitimate objections to the invalid subpoena.

It is true that Mr. El-Batrawi did not file objections after receiving the invalid subpoena, and was not required to, since there was no date specified in any process for making a response. During the telephone call on April 27, 2022, the parties never discussed the *date* that Mr. El-Batrawi was proposed to respond, as at that point it would have been an impossibility to make that prediction.

It is not as though Mr. El-Batrawi did not respond to the subpoena, however (even though he was not required to). Following the initial conversation on April 27, 2022, what followed was a "significant email traffic between Mr. Gyves and [Mr. Newhouse's] office in which we have discussed the work necessary for Mr. El-Batrawi to produce relevant documents, including . . . beyond question, that despite the defective SDT, Mr. El-Batrawi was and is working to search for, review and produce responsive, non-privileged documents, but that such efforts have required significant time and effort." (See Newhouse Decl., ¶¶ 12-15).

**C.  The Subpoena Duces Tecum Improperly Requires the Production of Communications That Are Within the Scope of Attorney Client Privilege That Will Require Company Counsel to Review a Large Number of documents**

Finally, Plaintiff asserts, incorrectly, that the "Subpoena is plainly directed at non-privileged documents relevant to the Underlying Action." (See Bellridge's Position in Joint Stipulation). This is plainly false as a cursory reading of the invalid SDT demonstrates. In fact, many of the categories of documents that Mr. El-Batrawi is required to search for, isolate and produce involve communications between himself (as past CEO of the YayYo/EvMo) and company or his private counsel. Examples abound, including the following paragraphs in the SDT (emphasis added):

20

6.      Any and all documents referring, reflecting or relating to, or otherwise constituting, any communications at any time between EVmo and **You (or your counsel**, if any) relating in any way to the Warrant Amendment.

7.      Any and all documents referring, reflecting or relating to, or otherwise constituting, any communications at any time between **EVmo's outside counsel and You (or your counsel,** if any) relating in any way to the Warrant Amendment.

8.      Any and all documents referring, reflecting or relating to, or otherwise constituting, **any communications at any time between EVmo's counsel at Carmel, Milazzo & Feil LLP and You (or your counsel,** if any) relating in any way to the Warrant Amendment.

26.  Any and all documents referring, reflecting or relating to, or otherwise constituting, any communications **between EVmo (or its outside counsel) and you (or your counsel**, if any) concerning any oral agreement to amend or otherwise modify the Warrant.

29.      Any and all documents referring, reflecting or relating to, or otherwise constituting, **any communications between EVmo (or its outside counsel) and you (or your counsel, if any) relating in any way to this litigation, captioned Bellridge Capital, LP v. EVmo, Inc.**, f/k/a Yayo, Inc. and Rideshare Rental, Inc., No. 1:21-cv-07091-PGG (S.D.N.Y.).

Mr. El-Batrawi's point here is that the improper request for communication obviously falling within the scope of attorney client privilege – whether EvMo intends to assert or waive the privilege – only adds to the burden for Mr. El-Batrawi in conducting the review.  The download by DISCO (eDiscovery Vendor) has identified *thousands of documents* that need to be segregated from

the review and then provide to Company counsel for their review. The privilege is not Mr. El-Batrawi's to waive, as Bellridge knows well. Including these paragraphs in the document request was a deliberate attempt to burden Mr. El-Batrawi and slow the production of relevant non-privilege documents.

## V.      BELLRIDGE CAPITAL'S CONCLUSION

For the foregoing reasons, Bellridge Capital respectfully requests that the Court enter an order directing El-Batrawi to make a full production of documents responsive to the Subpoena within five calendar days of that order.

## VI.     EL-BATRAWI'S CONCLUSION

He who seeks to enforce the rules, needs first to follow them. If Bellridge wants to enforce the technical requirements of Rule 45 with respect to a subpoena duces tecum, it needs to issue and serve a subpoena duces tecum that strictly complies with the elements of Rule 45. This imposes what should be an easy burden on Bellridge: issue and serve a subpoena that has a date for compliance at some point in the future. The date should be a reasonable one given the work required to produce relevant, responsive, non-privileged ESI. Clearly that cannot be "five calendar days" from issuance and service of a valid subpoena as Bellridge's conclusion to the Court urges. The motion to compel should be denied, and Respondent's cross motion to quash should be granted. If Bellridge truly needs Mr. El-Batrawi's records they only need to follow the rules.

1  Dated: July 21, 2022                    Respectfully submitted,

2  RICHARDS CARRINGTON, LLC          KELLEY DRYE & WARREN LLP

3

4  By: /s/ George B. Newhouse, Jr.        By: /s/ William S. Gyves
5         George B. Newhouse, Jr.                William S. Gyves

6  545 S. Figueroa Street, Seventh Floor   William S. Gyves
                                          (pro hac vice forthcoming)
7  Los Angeles, CA  90012                 Randall L. Morrison
   george@richardscarrington.com          (pro hac vice forthcoming)
8                                          3 World Trade Center
                                          175 Greenwich Street
9  Attorneys for Respondent               New York, NY  10007
   Ramy El-Batrawi                        Telephone: (973) 503-5950
10                                         wgyves@kelleydrye.com
                                          rmorrison@kelleydrye.com
11
                                          KELLEY DRYE & WARREN LLP
12                                         Ronnie Arenas (State Bar No. 309674)
                                          350 South Grand Avenue, Suite 3800
13                                         Los Angeles, CA  90071
                                          Telephone: (213) 547-4900
14
                                          Attorneys for Petitioner
15                                         Bellridge Capital, LP

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION RE: MOTION TO COMPEL NON-PARTY'S COMPLIANCE WITH SUBPOENA